UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALBERT A. GRAYER (#389690)                    CIVIL ACTION

VERSUS

TIMOTHY BUTLER, ET AL.                        NO. 18-0049-BAJ-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 14, 2019.

ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALBERT A. GRAYER (#389690)                          CIVIL ACTION

VERSUS

TIMOTHY BUTLER, ET AL.                              NO. 18-0049-BAJ-EWD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court are two Motions to Dismiss ("Motions"), the first filed on behalf of Zuccaro Blackmore and Nyesha Kelly and the second filed on behalf of William (Timothy) Butler.[1] For the following reasons, the undersigned recommends the Motions each be granted in part and denied in part.

### I.    Background

This complaint arises from a confrontation between Zuccaro Blackmore ("Blackmore") and *pro se* Plaintiff, Albert Grayer ("Plaintiff"), an inmate at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana.[2] On August 25, 2017, Blackmore responded to a "beeper activation" call to cell 13, Plaintiff's cell.[3] Blackmore mistakenly responded to Plaintiff's neighboring cell, cell 12, and, without warning or order, began spraying a chemical agent on the inhabitant of that cell Jeffro Williams.[4] Plaintiff informed Blackmore that he was at the wrong cell.[5] After checking the cell number and realizing he was indeed at the wrong cell, Blackmore proceeded to the Plaintiff's cell and began spraying Plaintiff with a chemical agent.[6] After this initial confrontation,

---

[1] R. Docs. 11 and 23.
[2] R. Docs 1 and 16.
[3] R. Doc. 1, p. 6.
[4] R. Doc. 1, p. 6.
[5] R. Doc. 1, p. 7.
[6] R. Doc. 1, p. 7.

Blackmore left Plaintiff in his cell for five to ten minutes before returning with William Butler ("Butler").[7] Butler allegedly refused to allow Plaintiff to shower or seek medical attention.[8]

After the above incident, Plaintiff filed multiple grievances with LSP.[9] However, Plaintiff alleges Nyesha Kelly ("Kelly") refused to issue any response to his grievances.[10] Plaintiff further alleges his complaints against Blackmore, though filed, failed to appear in his "back log notification."[11]

## II.    Law and Analysis

### A.  Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[12] and *Ashcroft v. Iqbal*,[13] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[14]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

---

[7] R. Doc. 1, p. 7.
[8] R. Doc. 1, pp. 7-8.
[9] R. Doc. 1, p. 4.
[10] R. Doc. 1, p. 4.
[11] R. Doc. 1, pp. 4-5.
[12] 550 U.S. 544 (2007).
[13] 556 U.S. 662 (2009).
[14] *Bell Atlantic Corp. v. Twombly*, *supra*, at 555.
[15] *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*.
[16] *Id.*

relief.'"[17] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[18]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[19] Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[20] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[21] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[22] Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[23] The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[24]

### B. Claims Against Nyesha Kelly

First, with respect to the handling of his ARP, the plaintiff does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved.[25] Further, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers*,[26] (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance

---

[17] *Id.* at 679.
[18] *Id.* at 678 (internal quotation marks omitted).
[19] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[20] *Id.* (citation omitted).
[21] *Papasan v. Allain*, 478 U.S. 265, 286 (1986),
[22] *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).
[23] Fed. R. Civ. P. 8(a)(2).
[24] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[25] *Mahogany v. Miller*, 252 F. App'x. 593, 595 (5th Cir. 2007)(wherein the Fifth Circuit held that a claim for failure to process grievances does not result in actual injury to prisoner as required for § 1983 claim).
[26] 404 F.3d 371 (5th Cir. 2005).

4

> procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.[27]

By § 1983's very language, a claim cannot exist where no constitutional right exists. Accordingly, Plaintiff's claims against Nyesha Kelly should be dismissed.

### C. Claims Against Zuccaro Blackmore and William Butler

Defendants Blackmore and Butler first assert, and are correct, that all monetary claims levied against them in their official capacities are barred.[28] 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[29] In addition, in *Hafer v. Melo*,[30] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[31] Accordingly, the Plaintiff's § 1983 claims asserted against these Defendants in their official capacities for monetary damages are subject to dismissal.

In contrast, Plaintiff's § 1983 claims for monetary damages asserted against the defendants in their individual capacities remain viable because a claim against a state official in an individual

---

[27] *Id.* at 373-74.
[28] Defendants allege it is unclear in what capacities the Defendants are being sued; however, it is clear from the captions of the Complaint and Amended Complaint that each Defendant is being sued in both his or her official and individual capacities.
[29] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[30] 502 U.S. 21 (1991).
[31] *Id*. at 25.

capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state.[32]

Defendants next argue they are entitled to qualified immunity with respect to the actions complained of herein. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[33] Taking the facts as alleged in the light most favorable to the plaintiff, the Court considers whether the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first.[34] This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. While ordinarily one who pleads an affirmative defense has the burden to establish his entitlement to that defense, where a defendant pleads qualified immunity and shows he is a government official whose position involves the exercise of discretion, the plaintiff has the burden to rebut the defense by establishing that the defendant's allegedly wrongful conduct violated clearly established law.[35] To defeat the qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly established constitutional or statutory rights. Although a plaintiff can file a detailed reply to address the assertion of the qualified immunity

---

[32] *Id*. at 29.
[33] *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012).
[34] 555 U.S. 223, 236 (2009)(concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").
[35] *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)(quotations and citations omitted).

6

defense, that is only required if the complaint is not sufficiently detailed to create a genuine issue as to the illegality of the defendant's conduct.[36] If the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the assertion of the qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss.[37]

It is axiomatic that corrections officers are faced with myriad situations where they must exercise discretion, including situations where they must choose whether to exercise force with regard to a prisoner. When force is used, a corrections officer must also exercise discretion to determine the amount of force used.[38]

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[39] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[40] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.[41]

---

[36] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995)(*en banc*).
[37] *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002)(*en banc*).
[38] *See, e.g., Henry v. North Texas State Hospital*, Civ. Action No. 12-cv-198, 2013 WL 3870292, *3 (N. D. Tex. July 9, 2013) ("Qualified immunity is available to public officials such as prison guards and state hospital employees who must exercise discretion.").
[39] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[40] *Hudson v. McMillian, supra,* 503 U.S. at 10.
[41] *Hudson v. McMillian, supra,* 503 U.S. at 7.

Viewing the facts in the light most favorable to Plaintiff, he has alleged sufficient facts to overcome the qualified immunity defense. Relative to the complained of incident, Plaintiff's assertions indicate he was fully compliant with Blackmore before and during the confrontation. The confrontation began because, according to the facts of the Complaint, Plaintiff voluntarily informed Blackmore that he was responding to the wrong cell, and Blackmore began spraying Plaintiff after realizing Blackmore was initially spraying the wrong offender. Nothing in the facts as alleged indicates non-compliance or a need to restore order; rather, the alleged facts indicate the opposite.[42] In addition, Plaintiff contends both Blackmore and Butler refused to allow Plaintiff to shower or to receive medical attention. Plaintiff alleges he specifically made a request to Butler to shower and seek medical attention, but Butler responded that "he was not concerned about no shower or medical."[43] Moreover, after being brought to the shower cell, so Plaintiff's cell could be searched, Butler continued to refuse to allow Plaintiff to shower and specifically ordered "that no-one turn the shower on."[44] Although Butler argues that he arrived "well after the alleged incident of excessive force," Butler's refusal to allow Plaintiff to rid himself of the noxious chemicals by showering is part and parcel of the claim for excessive force.[45] At the time of the alleged incidents, a reasonable corrections officer would have known that spraying a compliant

---

[42] R. Doc. 1, p. 7. ("[H]e [Blackmore] then stepped over to cell #13 which housed Plaintiff Grayer & without warning or order sprayed him with an excessive amount of chemical agent.")  While Defendants argue that because Plaintiff "does not deny that [Plaintiff] had a conflict that gave rise to the beeper activation" to which Blackmore was responding, sufficient to justify the amount of force applied, (R. Doc. 11-1, p. 9), this is a disputed issue of fact that is inappropriate for resolution on a motion to dismiss.
[43] R. Doc. 1, p. 7.
[44] R. Doc. 1, p. 7.
[45] *See e.g., Martin v. Seal*, 510 F.Appx. 309, 313 (5th Cir. 2013) (noting that it was relevant that security officers "arranged for the provision of medical care immediately after each spraying" and "offer[ed] [the plaintiff] a shower after each incident).

prisoner with a chemical agent and/or leaving that still compliant prisoner with the chemical agent on their skin with no relief was not objectively reasonable.[46]

## RECOMMENDATION

It is recommended that the Motion to Dismiss (R. Doc. 11) filed by Zuccaro Blackmore and Nyesha Kelly be granted in part dismissing, with prejudice, all of Plaintiff's claims against Nyesha Kelly, as well as Plaintiff's claims for damages against Zuccaro Blackmore in his official capacity. In all other respects, it is recommended that the Motion to Dismiss (R. Doc. 11) filed by Zuccaro Blackmore and Nyesha Kelly be denied and that this matter be referred back to the Magistrate Judge for further proceedings.

It is further recommended that the Motion to Dismiss (R. Doc. 23) filed by William Butler be granted in part dismissing, with prejudice, Plaintiff's claims for damages against William Butler in his official capacity. In all other respects, it is recommended that the Motion to Dismiss (R. Doc. 23) be denied and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on February 14, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[46] *Hudson v. McMillian, supra*, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312 (1986). *See also, Pea v. Cain*, Civil Action No. 12-779, 2014 WL 268696 (M.D. La. Jan. 23, 2014)(denying summary judgment on the plaintiff's claims that he was sprayed with a chemical agent without justification or provocation and then was not allowed to shower, or, conversely was compelled to shower in hot water, and was not seen by a medical officer until two hours after the incident).