## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ALBERT A. GRAYER (#389690)                              CIVIL ACTION NO.

VERSUS                                                                     18-49-BAJ-EWD

TIMOTHY BUTLER, ET AL.

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 19, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALBERT A. GRAYER (#389690) | CIVIL ACTION NO. |
| VERSUS | 18-49-BAJ-EWD |
| TIMOTHY BUTLER, ET AL. | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment ("Motion"),[1] filed by Zuccaro Blackmore and William T. Butler (collectively "Defendants").[2] The Motion is opposed and For the following reasons, it is recommended that the Motion be granted and that this case be dismissed without prejudice for failure to exhaust administrative remedies.

### I. Background

This complaint arises from a confrontation between Zuccaro Blackmore ("Blackmore") and Albert Grayer ("Plaintiff"), an inmate confined in the Louisiana State Penitentiary ("LSP") in Angola, Louisiana.[3] As the facts must be viewed in the light most favorable to the non-moving party, the following facts alleged by Plaintiff are assumed: On August 25, 2017, Blackmore, a corrections officer, responded to a "beeper activation" call to cell 13, Plaintiff's cell.[4] Blackmore mistakenly responded to Plaintiff's neighboring cell, cell 12, and, without warning or order, began spraying a chemical agent on the inhabitant of that cell, Jeffro Williams.[5] Plaintiff informed Blackmore that Blackmore was at the wrong cell.[6] After checking the cell number and realizing he was indeed at the wrong cell, Blackmore proceeded to Plaintiff's cell and began spraying

---

[1] R. Doc. 42.
[2] Plaintiff also originally named Nyesha Kelly as a Defendant, but Kelly was dismissed from this suit via this Court's ruling dated March 12, 2019. R. Doc. 36.
[3] R. Docs. 1 and 16.
[4] R. Doc. 1, p. 6.
[5] R. Doc. 1, p. 6.
[6] R. Doc. 1, p. 7.

Plaintiff with a chemical agent.[7] After this initial confrontation, Blackmore left Plaintiff in his cell for five to ten minutes before returning with William Butler ("Butler").[8] Butler refused to allow Plaintiff to shower or seek medical attention.[9]

Plaintiff "filed" a grievance regarding the August 25, 2017 incident (the "Incident"), but Nyesha Kelly ("Kelly"), the legal programs director, refused to process the grievance or to verify that it had been received.[10] Plaintiff alleges he submitted the pertinent grievance "multiple times" but was never issued a response.[11] One month after filing the grievance related to the Incident, Plaintiff requested a backlog notification regarding the grievance. Plaintiff was sent a copy of all backlogged grievances and discovered the pertinent grievance was absent.[12] Plaintiff submitted the grievance regarding the Incident a second time, along with another grievance, and, again, requested backlog notification.[13] On November 9, 2017, Plaintiff received his backlog notification but the backlog notification still did not list the grievance related to the Incident.[14] Plaintiff then sent a letter to Kelly notifying her that his grievance related to the Incident had not been processed and that further action would be taken if Kelly did not issue a response within ten days.[15] The further action taken by Plaintiff consisted of Plaintiff submitting a grievance regarding Kelly and the lack of a response to Plaintiff's grievance regarding the Incident.[16] Plaintiff seeks monetary relief against Defendants in their individual capacities.[17]

---

[7] R. Doc. 1, p. 7.
[8] R. Doc. 1, p. 7.
[9] R. Doc. 1, pp. 7-8.
[10] R. Doc. 4, p. 2.
[11] R. Doc. 4, p. 2.
[12] R. Doc. 4, p. 3.
[13] R. Doc. 4, p. 3.
[14] R. Doc. 4, p. 3.
[15] R. Doc. 4, p. 3.
[16] *See* R. Doc. 42-5.
[17] Plaintiff's claims for monetary damages against Blackmore and Butler in their official capacities were dismissed. R. Doc. 36.

2

## II.   Law and Analysis

### A.  Standard of Review

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[18] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[19] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[20] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[21] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[22]

---

[18] Rule 56, Federal Rules of Civil Procedure. *See also, Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).
[19] *Celotex Corp.*, 477 U.S. at 323.
[20] *Anderson*, 477 U.S. at 248.
[21] *Celotex Corp.*, 477 U.S. at 323.
[22] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

3

## B. Plaintiff Failed to Exhaust Administrative Remedies

Defendants contend that Plaintiff failed to exhaust administrative remedies with respect to the Incident. Pursuant to 42 U.S.C. § 1997e, Plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[23] This provision is mandatory and applies broadly to "all inmate suits about prison life."[24] Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions.[25] To fully exhaust administrative remedies, a prisoner must comply with an agency's deadlines and other critical procedural rules.[26] The Fifth Circuit has taken a strict approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must "exhaust available remedies properly."[27] One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'"[28] The degree of specificity required in a prisoner's grievance should be evaluated in light of this intended purpose.[29]

Plaintiff did not exhaust his available administrative remedies in connection with his claims prior to filing suit. The Louisiana Department of Public Safety and Corrections has implemented a two-step administrative process that involves the submission of an initial grievance to the

---

[23] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
[24] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
[25] *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).
[26] *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).
[27] *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).
[28] *Johnson*, 385 F.3d at 516, *quoting Porter*, 534 U.S. at 525.
[29] *Id.*

4

warden's office at the inmate's facility.[30] The administrative rules further provide that an inmate who is confronted with a matter of sufficient seriousness may bypass the normal administrative procedure and may file a grievance as one addressing a "problem of an emergency nature."[31] An emergency grievance is submitted directly to the shift supervisor instead of to the warden's office. In either instance, upon receipt, prison officials must provide a written response within 40 days (reduced to 5 days in connection with a Prison Rape Elimination Act claim) unless there is an extension requested or the grievance is placed on administrative backlog (because of other pending grievances).[32]

If the inmate is not satisfied with the First Step Response, the inmate has five days after receipt to submit a Second Step appeal to the office of the Secretary of the Department. The Secretary's office then has an additional 45 days from "receipt" of the inmate's appeal to file a final Second Step response thereto.[33] No more than 90 days from the initiation to the completion of the process shall elapse, unless an extension has been granted.[34] The administrative rules further provide that, upon passage of the time allowed for a response at any step of the administrative process, the inmate may proceed unilaterally to the next step.[35]

In support of their Motion, Defendants have submitted the affidavit of Delshadee Scott ("Scott"), an administrative assistant in the legal programs department at LSP.[36] According to Scott's sworn statement, Plaintiff submitted nine administrative grievances in 2017, but none of those grievances pertained to the Incident.[37]

---

[30] *See* 22 La. ADC, Part I, § 325.
[31] *See* 22 La. ADC, Part I, § 325(H).
[32] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(a).
[33] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(b).
[34] *Id.*
[35] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(c).
[36] R. Doc. 42-3.
[37] R. Doc. 42-3, p. 4.

Plaintiff admits in his verified Complaint, as amended, that he never received a response to any grievance allegedly submitted regarding the Incident.[38] Plaintiff also admits he was notified that the legal programs department did not have a record of a grievance regarding the Incident.[39] Plaintiff then submitted a letter complaining of Kelly and another grievance regarding Kelly's alleged failure to file Plaintiff's grievance related to the Incident.[40]

Plaintiff's evidence shows, at most, that he prepared a grievance regarding the Incident and attempted to submit it multiple times.[41] Any dispute as to whether Plaintiff actually submitted a grievance related to the Incident is immaterial, however, because, even were the Court to infer that Plaintiff submitted a grievance at the first step, it is undisputed that Plaintiff did not receive a response at the first step and did not proceed to the second step of the administrative remedy process. Plaintiff admits he never received a response at the first step.[42] Upon the passage of time allowed for a first step response, the administrative rules allowed Plaintiff to proceed unilaterally to the second step. Instead, Plaintiff chose to proceed directly to this Court rather than completing the steps in the administrative process. In doing so, Plaintiff failed to exhaust administrative remedies.[43]

Plaintiff argues that, once he did not receive a response from the first step in the prison grievance procedure, despite multiple attempts to submit his grievance and to check on its status, administrative remedies became unavailable to him. Under § 1997e(a), the exhaustion

---

[38] R. Doc. 1, p. 3; R. Doc. 4, p. 2.
[39] R. Doc. 4, p. 3.
[40] R. Doc. 4, pp. 3-4.
[41] *See* R. Doc. 4-1.
[42] R. Doc. 1, p. 3; R. Doc. 4, p. 2 ("Plaintiff submitted multiple times the facts relating to his complaint & at no times was he issued a response.
[43] *See Wilson v. Epps*, 776 F.3d 296 (5th Cir. 2015) (affirming summary judgment dismissing claims because the plaintiff had failed to exhaust administrative remedies as he did not proceed past the first step of the administrative remedy process after not receiving any response at the first step).

6

requirement hinges on the "availab[ility]" of administrative remedies.[44] Whether administrative remedies are available under § 1997e is a question of law, though availability may also turn on questions of fact.[45] "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."[46] There are three recognized circumstances in which an administrative remedy procedure is not available: (1) when the procedure operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when an administrative scheme is so opaque that it becomes, practically speaking, incapable of use; or (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.[47]

The first circumstance is inapplicable. The "dead end," as described by the Supreme Court, occurs when the procedure leads the inmate to seek relief from someone who disclaims the capacity to consider the grievance or where the relevant administrative procedure lacks authority to provide any relief.[48] Here, it is clear that prison officials processed multiple other grievances for Plaintiff in the same year the Incident allegedly occurred and they did not disclaim the capacity to consider Plaintiff's other grievances. The administrative remedy procedures at LSP do not simply lead to a dead end such that administrative remedies are unavailable.

Further, the administrative scheme at LSP is not so opaque as to be rendered incapable of use. Plaintiff was able to successfully file nine other grievances in 2017.[49] Finally, the undisputed evidence does not support a finding that prison officials purposefully thwarted the filing of

---

[44] *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016).
[45] *Dillon*, 596 F.3d at 266.
[46] *Id.* at 1859 (internal quotations and citations omitted).
[47] *Id.* at 1859-60.
[48] *Id.* at 1859.
[49] R. Doc. 42-3, p. 4.

7

grievances or engaged in misrepresentation or intimidation. Plaintiff admits he was informed by prison officials multiple times that no grievance regarding the Incident appeared in the system. Plaintiff was not misled regarding this fact.[50] Accordingly, administrative remedies were not unavailable to Plaintiff.

In *Etienne v. Cain*,[51] an inmate plaintiff contended he exercised due diligence in attempting to exhaust his administrative remedies, though the pertinent grievance was absent from the record.[52] The plaintiff argued that prison officials purposefully denied acknowledgement of receipt of the pertinent grievances such that his claims were exhausted although he did not receive a response.[53] This Court found the plaintiff's argument unpersuasive because, even if the plaintiff had submitted a grievance and prison officials failed to respond, the plaintiff had not alleged that he attempted to proceed to the second step of the grievance process upon not receiving a timely response from the first step. Regarding the plaintiff's attempt to rely on the allegation that prison officials ignored his grievance, this Court noted as follows:

> The plaintiff cannot rely upon an alleged failure of prison officials to timely address his grievances and argue that, as a result of such failure he should be deemed to have exhausted administrative remedies. To the contrary, considering that an inmate may himself take action to ensure completion of his grievance, the failure of prison officials to respond to a grievance does not constitute a valid excuse for failure to exhaust administrative remedies.[54]

---

[50] Further, as pointed out by Defendants, Plaintiff was informed that his grievance was absent from the system prior to the deadline for filing (Plaintiff had 90 days from the date of the incident to file a grievance and was notified of the lack of a grievance in the system on November 9, 2017), so Plaintiff could have attempted to submit his grievance at the first step again. (R. Docs. 4, p. 3; 42-2, p. 7).
[51] Civil Action No. 15-543, 2016 WL 3199317 (M.D. La. April 29, 2016), *report adopted by Etienne v. Cain*, 2016 WL 3221766 (M.D. La. June 8, 2016).
[52] *Id.*, at *3.
[53] *Id.*
[54] *Id.* (citations and quotation marks omitted).

In so holding, this Court went on to state that "a plaintiff cannot be excused from the PLRA's mandatory exhaustion requirements based on allegations that his grievance(s) was ignored."[55] Simply put, if a grievance is ignored or if an inmate believes she has been thwarted from filing a grievance at the first step, she is required to unilaterally proceed to the second step before filing suit. While Plaintiff alleges his grievance was submitted multiple times and ignored, Plaintiff does not allege that he proceeded to the second step upon the passage of time for a first step response before filing suit in this Court. As Plaintiff did not exhaust his administrative remedies prior to filing suit, Defendants' Motion for Summary Judgment should be granted.[56]

### RECOMMENDATION

**IT IS RECOMMENDED** that the Motion for Summary Judgment,[57] filed by Zuccaro Blackmore and William T. Butler, be **GRANTED**, and that all Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**[58] for failure to exhaust administrative remedies pursuant to 42 U.S.C § 1997e.

Signed in Baton Rouge, Louisiana, on February 19, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[55] *Id.*, quoting *Curry v. Alexandre*, 2006 WL 2547062 (W.D. La. June 19, 2006).
[56] *Gonzales v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (remanding to district court with instruction to grant defendant's motion for summary judgment because pre-filing exhaustion of prison grievance processes is mandatory).
[57] R. Doc. 42.
[58] *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) (affirming district court's dismissal of § 1983 action without prejudice for failure to exhaust administrative remedies).

9